Anna Miller, Individually and as Administratrix of the Estate of John T. Miller, Deceased, Appellant-Respondent, *v.* City of New York, Respondent, Maurice A. Fitzgerald, Individually and as Sheriff of the County of Queens, Defendant-Appellant, et al., Defendants.

First Department, July 16, 1943.

*Austin B. Mandel* for appellant Maurice A. Fitzgerald.

*Solomon Pearlman* of counsel (*Paul W. Hessel,* attorney), for appellant-respondent.

*Murray Sendler* of counsel (*Paxton Blair* with him on the brief; *Robert H. Schaffer, Acting Corporation Counsel*), for respondent City of New York.

CALLAHAN, J. On March 30, 1939, plaintiff's husband, John T. Miller, was killed while riding in a prison van which was being operated on the streets of the city of New York. Miller was employed as an assistant deputy sheriff of Queens County, and was acting as guard of the prisoners in the van. The driver of the van was one Otto Trautwein, who was a deputy sheriff. Both the deputy and the assistant were subordinates of defendant, Maurice A. Fitzgerald, Sheriff of Queens County. The van was being driven from the Queens County Court to the State prison at Ossining, N. Y., with a number of felons who had been sentenced to imprisonment.

There was evidence to sustain a finding that Trautwein was negligent in the operation of the car.

On the trial the jury found a verdict in favor of the plaintiff in the sum of $25,000 against defendants Fitzgerald and the City of New York. The trial court set aside the verdict as against the City, and dismissed the complaint as to it, but refused to set aside the verdict against Sheriff Fitzgerald. The plaintiff and the defendant, Sheriff Fitzgerald, have appealed.

On the date of the accident, the sheriffs of the counties within the city of New York were elective county officers. In other words, the occurrence herein was prior to the creation of the office of City Sheriff of the City of New York. At that time the statutes (County Law, former § 199-dd, added by L. 1938, ch. 552) empowered the city of New York to fix the salary of the sheriff of Queens County and that of his assistants. The creation of Trautwein's position and the fixation of his salary were by action of the Board of Estimate of the City of New York. His salary was paid by the City. The sheriff, however, had sole power to select and appoint his subordinates, and had appointed Trautwein and Miller.

Since January 1, 1938, New York City Charter, section 623, subdivision 2, has provided that the Commissioner of Correction of the City of New York shall have " Sole power and

authority concerning the care, custody and control of all court pens for the detention of prisoners while in the * * * county courts of the counties of The Bronx, Kings, Queens and Richmond and of all vehicles employed in the transportation of prisoners who have been sentenced * * *."

The prison van involved herein was purchased with funds supplied by the city of New York. It was registered in the name of " City of New York (Sheriff Queens County) " as owner. The van had been exempt from registration fees under a statute which granted such exemption to vehicles owned by municipalities. The van was used exclusively by the sheriff of Queens County for the transportation of prisoners. It was stored in a City garage. The expense for its upkeep and operation was ultimately paid by the city of New York.

It has been the law that a sheriff is deemed liable for the acts, defaults and torts of his deputies relating to the discharge of civil process, for in that respect they were said to be in the service of the sheriff personally and not in the service of the county. The relation of the sheriff to his appointees in the discharge of the duties relating to matters of criminal cognizance differs from that in the discharge of civil duties. In such criminal matters it has been held that the relation between the deputy and the sheriff was not that of principal and agent, nor would the rule of *respondeat superior* apply. In criminal matters deputies were considered in the service of the public and not of the sheriff personally. (*Matter of Flaherty* v. *Milliken,* 193 N. Y. 564, at p. 569.) The duties of the drivers of prison vans related solely to the transportation of criminal prisoners. (*Matter of Flaherty* v. *Milliken, supra,* p. 570.) Therefore, it would seem clear that if the doctrine of immunity of an agent of the State performing a governmental function still prevailed, defendant, Fitzgerald, would be immune from liability for the negligent acts of Trautwein in driving the prison van. That immunity, however, would seem to exist no longer. In *Bloom* v. *Jewish Board of Guardians* (286 N. Y. 349) decided July 29, 1941, the Court of Appeals determined that an agent of the State is no longer to be deemed immune from liability for the negligent acts of his employees in performing governmental functions, for the reason that the State itself had waived such immunity.

Following that decision it has lately been held that a county is no longer entitled to claim immunity from responsibility for the negligent acts of its servants in performing governmental

functions. (*Holmes* v. *County of Erie,* 178 Misc. 46, affd. 266 App. Div. 220.)

Assuming, without deciding, that defendant, Fitzgerald, would have no immunity for the acts of Trautwein in performing functions cast by law on the sheriff, we find, nevertheless, that under the circumstances existing here, the sheriff is free from liability. It is our view that because of the provisions of section 623 of the New York City Charter, under which the Legislature expressly imposed upon the City of New York the duty of transporting prisoners sentenced by the court in question and gave the City sole legal custody and control of vehicles employed in the transportation of prisoners, Trautwein, although an appointee generally of the defendant, Fitzgerald, was at the time of this accident performing a municipal function, and the servant *ad hoc* of the city of New York.

The City contends that, so construed, New York City Charter, section 623, would exclude the sheriff from powers and duties historically recognized as appurtenant to the office of sheriff. In other words, the City contends that section 623 would be unconstitutional if it be construed to take the duty of transporting prisoners from the sheriff. We do not agree with this contention. We find no provision in the New York State Constitution expressly conferring any such duty on the sheriff; nor do we believe that the duty of transporting prisoners after sentence was so embedded in the sheriff by the common law that the Legislature might not relieve the sheriff of that function.

In addition, we deem that the City was liable under section 59 of the Vehicle and Traffic Law, which at the time of the occurrence involved herein read as follows: " Every owner of a motor vehicle or motor cycle operated upon a public highway shall be liable and responsible for death or injuries to person or property resulting from negligence in the operation of such motor vehicle or motor cycle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."

The evidence disclosed that the City of New York owned the prison van in question. It further disclosed that the driver of the van was legally using the vehicle with the permission of the City of New York and in the performance of a duty cast upon the City by law. The City thus comes within the letter of section 59 of the Vehicle and Traffic Law, and we see no reason why it should not be held liable to persons injured by vehicles owned by it and operated with its permission.

We are aware of the fact that in *Lacock* v. *City of Schenectady* (224 App. Div. 512, affd. 251 N. Y. 575) it was held that former section 282-e of the Highway Law, which was the predecessor of section 59 of the Vehicle and Traffic Law, did not apply, so as to make municipalities liable for the negligent acts of public officials while operating vehicles owned by the City, in the performance of governmental functions. That decision, however, rested upon the rule of immunity then deemed applicable to municipalities while acting as State agencies. This immunity having been removed by the decision in *Bloom* v. *Jewish Board of Guardians* (*supra*), the legal basis upon which former section 282-e was held inapplicable in the *Lacock* case (*supra*) no longer exists.

Our attention has been called to the decision in *Enstrom* v. *City of New York* (258 App. Div. 672, Second Department) wherein it was expressly held that section 59 of the Vehicle and Traffic Law did not make the City liable for the operation of an automobile owned by it, and used by the sheriff of Richmond County. That decision was likewise rendered prior to the decision of the Court of Appeals in *Bloom* v. *Jewish Board of Guardians* (*supra*). Furthermore, the *Enstrom* case (*supra*) is clearly distinguishable on its facts. There the automobile in question was being used by the sheriff or his subordinate in the evening for private purposes in no way connected with official business. The statement in that case, that section 59 did not apply since the driver of the car was not acting within the scope of his employment at the time of the accident, was undoubtedly intended to refer to the extent of the permission granted by the City to use the car. Section 59 of the Vehicle and Traffic Law places responsibility on the owner of a vehicle whether it is being operated in the business of said owner or otherwise.

Under the circumstances it is unnecessary for us to determine whether under sections 50-a and 50-b of the General Municipal Law as it existed on the day of the present accident, the city of New York had been charged with liability for the prison van, or whether it had, by reason of the provisions of these statutes, assumed to indemnify the operator of the car and the sheriff from responsibility. Strictly construed, these statutes might appear to be limited to persons appointed by the governing board of a municipality or by any board, body, commission or other officer thereof. However, section 981 of the New York City Charter, defines an " agency " of the City as including a county position, or an institution or agency of gov-

ernment, the expenses of which are paid in whole or in part from the city treasury. It is sufficient for us to hold that, as to the operation of the van under the present circumstances, the city of New York was liable, in that Trautwein was performing a function which it was the legal duty of the City to perform, and upon the further ground that the provisions of section 59 of the Vehicle and Traffic Law made the City liable.

A contention is raised that the verdict herein was excessive. We think that it was larger in amount than the evidence justified, and that it should be reduced to $17,500.

The judgment should be modified by striking out the paragraph directing a verdict in favor of the defendant, the city of New York, and against the plaintiff, and by striking out so much of the judgment as directs that plaintiff recover of the defendant Fitzgerald, individually and as Sheriff, et cetera, the sum of $25,000, with interest and costs; and by providing that the verdict as against said defendant individually and as sheriff, et cetera, be set aside and the complaint dismissed as to said defendant, with costs; and that the action be severed and a new trial ordered as against the defendant, the city of New York, with costs to said defendant to abide the event, unless the plaintiff stipulates to reduce the verdict as against said defendant to the sum of $17,500, in which event the verdict, as so reduced, as against said defendant should be reinstated and judgment directed to be entered thereon, with interest and costs in favor of the plaintiff against said defendant, and that the said judgment as so modified, be affirmed, with costs of this appeal to the defendant Fitzgerald, individually and as Sheriff, et cetera, against the plaintiff, and to the plaintiff against the defendant, the city of New York; and that the order, entered August 17, 1942, be modified accordingly, and that the order dated July 17, 1940, and entered July 30, 1940, be affirmed.

DORE and COHN, JJ., concur; MARTIN, P. J., dissents as to the defendant Fitzgerald, individually and as sheriff, etc., and votes to reverse and grant a new trial as to both defendants, unless plaintiff stipulates to reduce the verdict to $17,500; in which event he votes to reinstate the verdict as so reduced against the defendant city of New York and for entry of judgment against both defendants on the verdict against both as so reduced, and for affirmance of the judgment as so modified; TOWNLEY, J., dissents and votes to reverse and grant a new trial as to the defendant Fitzgerald, individually and as Sheriff, et cetera, unless plaintiff stipulates to reduce the verdict against said defendant to $17,500 in which event he votes to affirm the judgment as so modified.

Judgment modified as stated in opinion, the action severed and a new trial ordered as against the defendant the City of New York, with costs to said defendant to abide the event, unless plaintiff stipulates to reduce the verdict as against said defendant to the sum of $17,500, in which event the verdict, as so reduced, is reinstated and judgment directed to be entered thereon, with interest and costs in favor of the plaintiff against said defendant, and the judgment as so modified, affirmed, with costs of this appeal to the defendant Fitzgerald, individually and as Sheriff, et cetera, against the plaintiff, and to the plaintiff against the defendant the City of New York. Order entered August 17, 1942, modified accordingly. Order dated July 17, 1940, and entered July 30, 1940, affirmed. Settle order on notice.